UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ENED GJELAJ,

                           Petitioner,                    09 Civ. 3126 (KMW)(PED)

          - against -                                     **REPORT AND
                                                          RECOMMENDATION**
ROBERT ERCOLE,

                           Respondent.

TO:    THE HONORABLE KIMBA M. WOOD
       UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

        Ened Gjelaj ("Petitioner"), through counsel, seeks a writ of *habeas corpus* pursuant to 28

U.S.C. § 2254.  Following a jury trial in Westchester County Court, Petitioner was convicted on

July 18, 2006 of several counts of robbery, burglary, grand larceny, conspiracy, criminal

possession of stolen property, and unauthorized use of a vehicle charges (Zambelli, J.).  He was

sentenced to an aggregate term of seventy-five years imprisonment.  This petition comes before

me pursuant to an Order of Reference dated April 3, 2009 (Docket No. 5).  For the reasons set

forth below, I respectfully recommend that this petition be **DENIED**.

## II. BACKGROUND[1]

A.     **The Crimes, Police Investigation, Warrants, and Arrest**

---

        [1] This synopsis is taken from a review of the Petition ("Pet.") (Docket No. 1), the
Declaration in Support of the Petition (Docket No. 2), the Memorandum of Law in Support of
the Petition ("Pet'r Mem.") (Docket No. 3), the Affidavit in Opposition to the Petition ("Resp't
Aff.") (Docket No. 10), the Memorandum of Law in Opposition to the Petition ("Resp't Mem.")
(Docket No. 11), and the Appendix Volume I ("Resp't App. I") (Docket No. 11) and Volume II
("Resp't App. II") (Docket No. 12).

The facts of the underlying criminal offenses may be briefly summarized. Between September and December 2004, Petitioner and several other individuals committed three home-invasion burglaries in Westchester and Rockland Counties. The victims were assaulted and restrained. The crimes netted over $100,000 in cash and, among other things, a coin collection valued at over $1 million. Witnesses to the first two burglaries – both of which occurred in September in Westchester County – provided similar descriptions of the intruders and their *modus operandi*. From this information, law enforcement obtained a court order for a cell site "dump" for the geographical areas near those homes and during the time periods witnesses stated the intruders were present and used cellular phones. Cell tower information revealed that three cellular telephone numbers repeatedly contacted each other during this time period and in those areas. A court order was then obtained for the detailed records of the phone numbers for a period of five days before and after the dates of each burglary.

The police also obtained eavesdropping warrants to intercept and record communications transmitted to and from the three phone numbers. The court ordered that the eavesdrops "minimize" any non-pertinent calls. Specifically, the warrants were limited to:

> (i) identifying the individuals utilizing the above-captioned cellular telephones, including Suspects # 1, 2 and 3, their agents and co-conspirators, and identifying all of the individuals involved in the home invasions of the Gouveia and Spivak residences, along with identifying all of the members of this professional burglary ring; (ii) the scope of this illegal burglary ring . . . ; (iii) plans of future burglaries; (iv) establishing who finances the burglaries; (v) the ultimate destination of money and property stolen during the commission of the burglaries; (vi) the burglaries/robberies of the Gouveia and Spivak residences; and (vii) the efforts planned or undertaken to ensure that investigations by law enforcement do not interfere with the successful commission of such crimes, which telephonic and electronic communications may be cryptic, guarded or coded . . . .

(See, e.g., R. on Appeal, at 96 (attached to Resp't App. II, at Ex. 11)). In addition, the court ordered that, in the event any non-English or non-Spanish communications were intercepted and

2

translators were not readily unavailable, law enforcement was "authorized to listen to and record such communication in its entirety, and, as soon as practicable, have an appropriate expert in the . . . foreign language listen to the recording of the communication in a manner designed to minimize the retention of non-relevant or privileged communications." (Id.)[2] Many of the communications were later determined to be in Albanian. Because of the limited number of Albanian translators, law enforcement recorded a number of Albanian-language communications onto DVDs for later minimization by the translators. The translators minimized those recorded calls,

> [B]y playing the call into a Marantz cassette tape recorder, which permitted the translator to only hear those portions of the call that were being recorded onto the cassette tape. The translator would listen to such calls and minimize them (according to the previously given instructions) by turning off the cassette recorder (when required to minimize the conversation) as the call continued to play.

(Id. at 107). The DVDs and cassettes were later sealed by the court.

A third burglary occurred in December at a home in Rockland County. The next day, search warrants were obtained for the suspects' residences and persons. Petitioner and the others were then arrested.

## B.     Indictment and Pretrial Proceedings

Petitioner was indicted on thirty-seven counts of burglary, robbery, assault, criminal possession of stolen property, criminal possession of a weapon, criminal mischief, unauthorized use of a vehicle, conspiracy, and criminal facilitation charges.

During discovery, it was determined that forty-nine calls containing Albanian communications were never properly minimized. The information was sent to translators and

---

[2] The victims informed the police that the intruders spoke to each other in a language that sounded like Russian, Czechoslovakian, or Arabic.

the calls were then minimized. All minimized communications were produced to the defendants. Petitioner requested discovery of the pre-minimized recordings and the court denied the request.

By pretrial omnibus motion, Petitioner moved to, among other things, sever his case from a co-defendant and suppress evidence seized pursuant to the eavesdropping warrants on the ground that the warrants were not based upon probable cause. The court denied each motion.

By supplemental affidavit, Petitioner moved to suppress evidence seized pursuant to the eavesdropping warrants on the ground that the State failed to comply with appropriate minimization procedures. Specifically, Petitioner argued that the grand jury transcripts revealed that an investigator had testified that "all conversations were recorded and retained." (Id. at 80 (emphasis omitted)). The prosecutor disagreed and counsel argued their respective positions to the court during a pretrial conference. The court found that English communications were contemporaneously minimized; that only foreign language communications were recorded, and only when Albanian translators were not on duty; that those recordings were minimized later by translators who listened to the communications as if in real-time[3] and recorded pertinent material to cassettes; and that the original DVD recordings were sealed by the court. The court determined that the procedures complied with the eavesdropping warrants and it denied Petitioner's suppression request.

## C.   Petitioner's Trial Counsel

Petitioner retained his own defense attorney, Vincent Lanna, Esq. ("Lanna"). Lanna actively participated in the defense until after the start of trial. Previously, Lanna had informed the trial court of a certain medical condition he suffered from. The trial court requested that

---

[3] I.e., the translators did not stop and start the DVD recordings.

4

Lanna ensure that another attorney second-chair the proceedings in the event his medical condition worsened and he became incapacitated.[4]  Transcripts from a pretrial conference held on February 1, 2006 reflect that Lanna agreed to this request in the presence of Petitioner.[5] George Nader, Esq. ("Nader"), an associate at Lanna's firm, appeared with Lanna during jury selection.  (See Resp't App. I, at Ex. 5).

On February 21, 2006, after jury selection, opening statements, and three days of testimony, Lanna informed the court that his medical condition had worsened and that it prevented him from appearing at trial.  The court noted that for months it had warned Lanna and Petitioner that a second-chair was needed.  (See Feb. 21, 2006 Tr., at 645-59 (Docket No. 18)). Specifically, the court noted:

> Well, Mr. Lanna, last fall I was very – it was very clear to me because of your medical problems that you needed to have another lawyer second seat you. That's when you assured me from last fall forward, even though you were having these medical problems and operations, that Mr. Gilleece, Kevin Gilleece will be here second seating you.
> You were suppose [sic] to have him here in January when we had the conference.  You didn't have him here in January.  You assured me he would be second seating you because I recognized your medical problems and having concerns for the last several months of your ability to try this case.  You told me Mr. Gilleece would not be able to second seat you in the event you had a problem, which is what you clearly have now.  So, what I told you before this trial started, well before this trial started, if you had a problem, Mr. Nader would step in.  Mr. Gjelaj was part and

---

[4] The initial conversation regarding Lanna's condition and the need for a second-chair apparently took place off the record.

[5]

| THE COURT: | Mr. Lanna, I will see you Monday morning at 9:30. |
| MR. LANNA: | I'm here and I've already ordered, pursuant to your direction, that Mr. Nader be here. |
| THE COURT: | Yes. We have to voir dire the jury on him. |
| MR. LANNA: | He'll be here in chains.  How is that?  You'll see me dragging him in. |

(Feb. 1, 2006 Tr., at 86-87 (Docket No. 13)).

parcel of that discussion right from the start, before this trial began. That if you had a bad day, you were unable to try this case, Mr. Nader would step in and try it and continue it so this jury wouldn't be held in suspense and the prosecution could move forward with its case.

Mr. Nader was suppose [*sic*] to be here today. You knew last Friday you had a problem. He was to be here today to continue with this trial. And he's not here. You indicated to me he went out of town last night or this morning. He had no business doing that. This is not going to happen again.

This trial is going to proceed. Mr. Nader is expected to be here each and every morning before 9:30 to continue this trial with you or without you, sir.

(<u>Id.</u> at 647-50). Petitioner then addressed the court, stated he did not want to proceed with Nader

as his only attorney, and indicated that he preferred to adjourn the trial until Lanna returned. The

court denied the request:

| | |
|---|---|
| LANNA: | I think Mr. Gjelaj would like to say something. |
| COURT: | Mr. Gjelaj. |
| GJELAJ: | I don't feel comfortable going on just with my – with George Nader. |
| COURT: | Well, Mr. Gjelaj, Mr. Lanna was told right from the start with you present that it would be Mr. Nader if he couldn't appear. Now is not the time to object to that. The objection should have been laid months ago when this issue was raised. |
| GJELAJ: | It wasn't asked of me. |
| COURT: | Well, you were present when we had the dialogue with Mr. Lanna right here explaining that the trial would go on with Mr. Nader representing you if Mr. Lanna couldn't. At that time it was explained that if he had a bad day or if he had a problem, Mr. Nader would be stepping in. |
| GJELAJ: | You said a bad day, not the whole trial. |
| COURT: | If it's a day, a week or whatever it may be. We went into that with the understanding that Mr. Lanna may have a physical problem. Look, you're welcome – you're welcome to bring in another lawyer, but the trial is going to continue with Mr. Nader at this stage. Other arrangements may be made but it won't be held in obeyance [*sic*] while that happens. |
| . . . | |
| | Well, Mr. Gjelaj, this has been the plan from the outs[et]. If you didn't like that plan, you should have made other arrangements. |
| GJELAJ: | It's not a plan, but it's just something that happened. It's not about one day or two or a week. It's going to happen till the end of the trial. How am I suppose [*sic*] to finish it with George Nader? It's just the way I feel. |
| COURT: | Well, that was up to you and Mr. Lanna to work something out then way ahead of time if you didn't want Mr. Nader to be here. This was all very predictable and avoidable. Now is not the time to say you do not want to proceed with George Nader. You were told from the outs[et] that he was |

6

going to be in. I understand you want Mr. Lanna, but Mr. Lanna physically is telling us he can't do it. If you don't want George Nader, you'll have to make other arrangements at this stage, but I'm telling you the trial will not stop for you to do that. All right.

(Id. at 655-58).

The next day, Nader appeared and informed the court that he was prepared and ready for trial. However, he reiterated Petitioner's request that the trial be adjourned until Lanna could return. The court noted that it had warned Lanna for almost a year that the trial would proceed in the event he became incapacitated. It also noted that it had already held the trial in abeyance for six months pending Lanna's medical condition:

| | |
|---|---|
| NADER: | As far as my obligation to be here yesterday, judge, I wasn't under any legal obligation to be here. Mr. Lanna is the attorney of record in this matter. Mr. Lanna is the attorney that Mr. Gjelaj hired and paid to do this trial not myself. There is no substitution for Vinny Lanna. There is not an attorney in this building that can actually substitute for Mr. Lanna. |
| | I'm here because I'm obligated by your Honor to come here today and to proceed. I'm ready to work. But from what I was told from Mr. Lanna yesterday, that Mr. Gjelaj is not happy with my proceeding with the case vis-à-vis having Mr. Lanna or awaiting Mr. Lanna's arrival back to this trial and to, you know, resume the trial. |
| | So, it's incumbent upon me to put on the record that Mr. Gjelaj, you know, is not happy that we are proceeding without Mr. Lanna being the trial attorney of record on this case. |
| COURT: | Mr. Nader, let me just explain. For almost a year this Court has said to Mr. Lanna he shouldn't be trying this case because of his obvious physical disability. I told him he shouldn't try it. He insisted he could. I told him – I insisted that he have someone second seat him. I reviewed the minutes since last fall. He has represented to this Court Mr. Gilleece would be second seating him. He has represented that on at least three separate occasions on and off the record that Mr. Gilleece would be here on January 3rd. Then he further represented to this Court that Mr. Gilleece would be trying the case in the event he was physically unable to do so because quite frankly Mr. Lanna's physical condition has been well known to everybody that could see him that he was having difficulty ambulating, simply ambulating into this court. |
| NADER: | Right. |
| COURT: | Then when he told me Mr. Gilleece would not be trying it, he represented to me you would. |

7

| | |
|---|---|
| NADER: | Right. |
| COURT: | He would make arrangements, you would. That's why you were here for voir dire. Your client was present at the time you appeared for voir dire. He was told that you would step in in the event Mr. Lanna was unable to physically proceed. That's where it stands. That's where it's going to continue. |
| NADER: | Judge, I have no problem with working today. |
| COURT: | You were in this case, and I'm hoping Mr. Lanna can come back, perhaps he can be here tomorrow. Maybe he can be here the next day. |
| NADER: | I understand. |
| COURT: | But I have explained to him, we have held this trial in obeyance [*sic*] for over six months because of his medical problems. |
| NADER: | Right. |
| COURT: | I said to him that was the end of it. He had to have someone second seat him. He could not hold up the co-defendant. It's not fair to [the co-defendant] and the other co-defendants at the time. That's where we stand. That's the way we are going to proceed. |

(Feb. 22, 2006 Tr., at 670-74 (Docket No. 17)). Later that day, Nader informed the court that he

would be in continuous contact with Lanna throughout the trial proceedings:

| | |
|---|---|
| COURT: | Mr. Nader, we should put on the record what we discussed after the break this morning. That was if you were going to have a continuing dialogue with Mr. Lanna. |
| NADER: | Yes, you did ask me that judge. My answer was, of course. I've been instructed by him to have nightly dialogue with him subsequent to our appearances here in court and, you know, I'll continue to do that until he comes into this court on his own volition either as, you know, assisting the trial in some sort of way, but I will continue to have dialogue with him. However, my client also instructed me once again, I'll probably make this a continuous statement throughout the trial till Mr. Lanna gets back, is he prefers that the trial wait until Mr. Lanna feels better. I'm sure he has confidence in my ability, but he feels as though he would rather wait until Mr. Lanna is here to resume his role in which he hired him for, to try this case.<br><br>So, that's a continuous statement and concern of the clients [*sic*], and he wants me to put it on the record every day until Mr. Lanna gets back. Is that not correct, Mr. Gjelaj? |
| GJELAJ: | Yes. |
| COURT: | Mr. Nader, you have a date certain when he's going to be back? |
| NADER: | No, I don't, judge. |

8

(Feb. 22, 2006 Tr., at 783-85 (Docket No. 18)).[6]

On February 24, 2006, the trial court judge stated on the record that she had just telephoned Lanna, that Lanna informed her he would not physically be able to appear in the courtroom for the rest of the trial, and that Lanna informed her that he and Nader would communicate daily.  (See Feb. 24, 2006 Tr., at 1203-07 (Docket No. 20)).

**D.**     **Verdict**

On March 13, 2006, the jury returned a verdict finding Petitioner guilty of the following offenses: three counts of robbery in the first degree;[7] five counts of robbery in the second

---

[6] Transcripts from the February 22, 2006 proceeding are incorrectly bound.  Its pages are found within the transcripts docketed at Numbers 17 and 18.

[7]

A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
. . .
3. Uses or threatens the immediate use of a dangerous instrument; or
4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . .

N.Y. Penal Law § 160.15(3)-(4).

degree;[8] three counts of burglary in the first degree;[9] two counts of grand larceny in the second

degree;[10] one count of unauthorized use of a vehicle in the first degree;[11] two counts of criminal

---

[8]

      A person is guilty of robbery in the second degree when he forcibly steals property and when:
1. He is aided by another person actually present; or
2. In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [c]auses physical injury to any person who is not a participant in the crime; or
. . .
3. The property consists of a motor vehicle . . . .

N.Y. Penal Law § 160.10(1), (2)(a), (3).

[9]

      A person is guilty of burglary in the first degree when he knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another participant in the crime:
. . .
2. Causes physical injury to any person who is not a participant in the crime; or
. . .
4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . .

N.Y. Penal Law § 140.30(2), (4).

[10] "A person is guilty of grand larceny in the second degree when he steals property and when . . . [t]he value of that property exceeds fifty thousand dollars . . . ." N.Y. Penal Law § 155.40(1).

[11]

      A person is guilty of unauthorized use of a vehicle in the first degree when knowing that he does not have the consent of the owner, he takes, operates, exercises control over, rides in or otherwise uses a vehicle with the intent to use the same in the course of or the commission of a class A, class B, class C or class D felony or in the immediate flight therefrom. A person who engages in any such conduct without the consent of the owner is presumed to know he does not have such consent.

N.Y. Penal Law § 165.08.

possession of stolen property in the third degree;[12] one count of conspiracy in the fourth degree;[13]

and one count of conspiracy in the fifth degree.[14]

**E.      Motion to Set Aside Verdict**

After the verdict, Petitioner obtained new counsel.  He moved to set aside the verdict on

the following grounds:[15]

> (1)      the State failed to comply with the provisions of Section 700.70 of the New
> York Criminal Procedure Law because it did not provide Petitioner with a
> copy of the eavesdropping warrants fifteen days after arraignment;[16] and

---

[12]

> A person is guilty of criminal possession of stolen property in the third
> degree when he knowingly possesses stolen property, with intent to benefit himself
> or a person other than an owner thereof or to impede the recovery by an owner
> thereof, and when the value of the property exceeds three thousand dollars.

N.Y. Penal Law § 165.50.

[13] "A person is guilty of conspiracy in the fourth degree when, with intent that conduct
constituting . . . a class B or class C felony be performed, he or she agrees with one or more
persons to engage in or cause the performance of such conduct . . . ."  N.Y. Penal Law §
105.10(1).

[14] "A person is guilty of conspiracy in the fifth degree when, with intent that conduct
constituting . . . a felony be performed, he agrees with one or more persons to engage in or cause
the performance of such conduct . . . ."  N.Y. Penal Law § 105.05(1).

[15]

> At any time after rendition of a verdict of guilty and before sentence, the
> court may, upon motion of the defendant, set aside or modify the verdict or any part
> thereof upon . . . [a]ny ground appearing in the record which, if raised upon an
> appeal from a prospective judgment of conviction, would require a reversal or
> modification of the judgment as a matter of law by an appellate court.

N.Y. Crim. Proc. Law § 330.30(1).

[16]

> The contents of any intercepted communication, or evidence derived
> therefrom, may not be received in evidence or otherwise disclosed upon a trial of a
> defendant unless the people, within fifteen days after arraignment and before the

11

(2)     the State failed to comply with the provisions of Sections 700.50(2) and
700.35(3) of the New York Criminal Procedure Law, as well as Section
2518(8)(a) of Title 18 of the United States Code, because it failed to properly
seal and record the intercepted communications.[17]

(Ex. 6).  The court denied Petitioner's motion.  (Ex. 9).

**F.     Sentencing**

Petitioner was sentenced on July 18, 2006 to various terms of imprisonment ranging

between one and 25 years.  Among other things, the court imposed three 25 year determinate

sentences and ordered them to run consecutively.  Accordingly, Petitioner was sentenced to a

total aggregate term of imprisonment of 75 years, together with a five-year period of post-release

supervision.

**G.     Direct Appeal**

_____

commencement of the trial, furnish the defendant with a copy of the eavesdropping
warrant, and accompanying application, under which interception was authorized or
approved.  This fifteen day period may be extended by the trial court upon good
cause shown if it finds that the defendant will not be prejudiced by the delay in
receiving such papers.

N.Y. Crim. Proc. Law § 700.70.

[17] "Immediately upon the expiration of the period of an eavesdropping . . . warrant, the
recordings of communications or observations made pursuant to § 700.35(3) must be made
available to the issuing justice and sealed under his directions."  N.Y. Crim. Proc. Law §
700.50(2).  "The contents of any communication intercepted . . . must, if possible, be recorded
on tape or wire or other comparable device.  The recording of the contents of any such
communication or observation must be done in such way as will protect the recording from
editing or other alterations."  Id. § 700.35(3).

The contents of any wire, oral, or electronic communication intercepted . . . shall, if
possible, be recorded on tape or wire or other comparable device.  The recording of
the contents of any wire, oral, or electronic communication under this subsection
shall be done in such a way as will protect the recording from editing or other
alterations.

18 U.S.C. § 2518(8)(a).

12

Petitioner, through appellate counsel, appealed his conviction to the New York State Appellate Division, Second Department and raised the following claims:

(1)  the court erred in failing to suppress evidence seized pursuant to the eavesdropping warrants because the State failed to comply with the minimization requirements provided by Sections 700.30(7) and 700.35(4) of the New York Criminal Procedure Law, as well as the express limitations provided in the warrants;[18]

(2)  Petitioner was deprived of his Sixth Amendment and state constitutional rights to the counsel of his choice;

(3)  the trial court impermissibly amended one of the counts in the Indictment;

(4)  the trial court lacked jurisdiction to prosecute the counts that pertained to crimes occurring in Rockland County; and

(5)  the seventy-five year sentence was excessive.

(Ex. 10).  The Second Department affirmed the conviction on December 26, 2007.  People v. Gjelaj, 848 N.Y.S.2d 350 (App. Div. 2007).  The New York Court of Appeals denied leave to appeal on May 6, 2008.  People v. Gjelaj, 10 N.Y.3d 863 (2008).  Petitioner did not seek a writ of *certiorari* to the United States Supreme Court, nor has he filed motions seeking state collateral relief.  (See Pet., at 4).

---

[18]

An eavesdropping . . . warrant must contain . . . [a] provision that the authorization to intercept or conduct video surveillance shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications or the making of observations not otherwise subject to eavesdropping or video surveillance under this article, and must terminate upon attainment of the authorized objective, or in any event in thirty days . . . .

N.Y. Crim. Proc. Law § 700.30(7).

In the event an intercepted communication is in a code or foreign language, and the services of an expert in that foreign language or code cannot reasonably be obtained during the interception period, where the warrant so authorizes and in a manner specified therein, the minimization required by § 700.30(7) of this article may be accomplished as soon as practicable after such interception.

Id. § 700.35(4).

13

**H.**   ***Habeas Corpus* Proceedings**

Petitioner filed his petition seeking a writ of *habeas corpus* on April 1, 2009 and raised

the following claims:[19]

    (1)    Petitioner was deprived of his Sixth Amendment right to the counsel of his choice and to the effective assistance of counsel;

    (2)    the State failed to minimize the conversations that were seized pursuant to the eavesdropping warrant in violation of the Fourth Amendment and 18 U.S.C. § 2515 *et seq.*; and

    (3)    the 75-year sentence was disproportionate to the crime of conviction which violated Petitioner's Eighth Amendment rights.

(See Pet. ¶ 12).

## III. DISCUSSION

**A.**   **Applicable Law on *Habeas Corpus* Review**

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may

review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with § 2254(d).  The procedural and substantive standards applicable to *habeas*

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized

below.

    **1.**   ***Timeliness Requirement***

------

[19] The petition was timely filed.  See 28 U.S.C. § 2244(d)(1)-(2).

14

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply. See id. § 2244(d)(1). Under the statute, the limitation period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v.

McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have

"prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129,

134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  The applicant for equitable

tolling must "demonstrate a causal relationship between the extraordinary circumstances on

which the claim for equitable tolling rests and the lateness of his filing – a demonstration that

cannot be made if the petitioner, acting with reasonable diligence, could have filed on time

notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

### 2.   *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his

claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. §

2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented").  The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claim.  Rose v. Lundy, 455 U.S. 509,

518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the

16

opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin

v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because

non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas

petition must put state courts on notice that they are to decide federal constitutional claims."

Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209,

221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the

factual and legal premises of the federal claims ultimately asserted in the habeas petition."

Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be

"fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and

verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b)
> reliance on state cases employing constitutional analysis in like fact situations, (c)
> assertion of the claim in terms so particular as to call to mind a specific right
> protected by the Constitution, and (d) allegation of a pattern of facts that is well
> within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails

to meet a state's requirements to exhaust a claim will be barred from asserting that claim in

federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a

federal claim be presented to a state court if it is clear that the state court would hold the claim

procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation

omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the

State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.

1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court.

See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural

17

default and prejudice attributable thereto," <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989), or "actual innocence," <u>Schlup v. Delo</u>, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." <u>Rhines v. Weber</u>, 544 U.S. 269, 277 (2005); <u>see</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); <u>see also, e.g.</u>, <u>Padilla v. Keane</u>, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3. *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. <u>Harris</u>, 489 U.S. at 262; <u>see also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 730 (1991); <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991); <u>Levine v. Comm'r of Corr. Servs.</u>, 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. <u>Jimenez v. Walker</u>, 458 F.3d 130, 138 (2d Cir. 2006) (citing <u>Colman</u>, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)).

### 4. *AEDPA Standard of Review*

18

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims. 28 U.S.C. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2). The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). Where the state court "did not reach the merits" of the federal claim, however, "federal habeas review is not subject to the deferential standard that applies under AEDPA . . . . Instead, the claim is reviewed *de novo*." Cone v. Bell, 129 S. Ct. 1769, 1784 (2009); see § 2254(d).

Under the first prong of the AEDPA deferential standard, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A decision

involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." § 2254(e)(1).

**B.**     **Analysis of Petitioner's Claims**

    **1.**     ***Counsel of Choice (Claim 1)***[20]

The first claim raised in the Petition asserts the state court deprived Petitioner of his Sixth Amendment right to the counsel of his choice. (See Pet., at 6). Specifically, Petitioner argues the state court unreasonably prevented him from continuing with Lanna as his attorney when the court denied his requests for adjournment following Lanna's medical emergency. (See Pet'r Mem., at 14-23). Respondent contends the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. (See Resp't Mem., at 23-40). The Second Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address Claim 1. See Ylst, 501 U.S. at 803. It is clear that the court denied this claim on the merits. See Gjelaj, 848 N.Y.S.2d at 351. Accordingly, I address Claim 1 pursuant to AEDPA's deferential standard of review.

---

[20] For organizational purposes, I identify the claims raised as they are numbered in the Petition and listed in Section II(H) above.

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The Supreme Court has construed this clause to include "the right of a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). A deprivation of this right to the counsel of choice is,

> "[C]omplete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice – which is the right to have a particular lawyer regardless of comparative effectiveness – with the right to effective counsel – which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.

Id. at 146.

This right, however, is not absolute. It may appropriately be limited in situations where "it is outweighed by competing interests in the fair administration of justice or maintaining orderly trial procedures." Lainfiesta v. Artuz, 253 F.3d 151, 154 (2d Cir. 2001); see also, e.g., Gonzalez-Lopez, 548 U.S. at 152 (citing Wheat v. United States, 486 U.S. 153, 163-64 (1988) and Morris v. Slappy, 461 U.S. 1, 11-12 (1983)) (trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar"). Further, it is well-settled that trial courts are afforded "broad discretion" to determine "matters of continuances." Slappy, 461 U.S. at 11; see also Ungar v. Sarafite, 376 U.S. 575, 589 (1964). The right to the counsel of one's choice, however, may not be arbitrarily denied. Slappy, 461 U.S. at 11-12. Where the right has been arbitrarily denied, automatic reversal is required. Gonzalez-Lopez, 548 U.S. at 148.

Several cases from the Supreme Court and Second Circuit provide guidance with respect to Petitioner's claim. In particular, in Morris v. Slappy, the defendant's original attorney

21

required emergency surgery six days before the start of trial. A new public defender from the same office was immediately assigned to represent the defendant. At his first appearance, the new attorney informed the court that he was ready for trial. The court denied the defendant's request for a continuance to allow his new attorney further time to prepare. See Slappy, 461 U.S. at 5-9. On *habeas* appeal, the Supreme Court found that the trial court had acted within its discretion, that the defendant had not been denied his Sixth Amendment rights, and that *habeas* relief was unwarranted. See id. at 13-15.

Additionally, in United States v. Cicale, 691 F.2d 95 (2d Cir. 1982), the defendant retained his own attorney. The court adjourned the trial date twice due to the attorneys' scheduling conflicts, and then informed counsel that the date it selected was "final." Cicale, 691 F.2d at 106. Eleven days before trial, the defendant's attorney requested another adjournment due to a scheduling conflict. The court denied the request and instructed the defendant to hire a new attorney or the court would appoint him one. Three days later, the defendant appeared *pro se* and asked the court for an adjournment. The court denied the request. On the first day of trial, the defendant's newly retained attorney requested an adjournment. Although the new attorney was provided only three and one-half days of preparation time, the court denied the request. On appeal, the Second Circuit determined that, among other things, the trial court's need "to balance his own trial calendar" and "the interests of the original five defendants and their individual counsel" outweighed the defendant's right to the attorney of his choosing. Id.

In this case, Lanna informed the trial court of his medical condition, the court previously held the case in abeyance because of Lanna's medical problem, and the court continuously warned that further adjournments would not be granted in the event Lanna became incapacitated. Petitioner was present when the court directed Lanna ensure a second-chair was available. After

22

Lanna's medical issue prevented him from appearing in court, both Lanna and Nader represented to the court that they were working together on a daily basis. Nader also repeatedly represented he was prepared and ready for trial. Further, the trial court took note of the speedy trial interest of Petitioner's co-defendant, as well as the prejudice to witnesses, the jury, and opposing counsel. Its decision to deny adjournment pending Lanna's indefinite delay was therefore not unreasonably or arbitrarily made. See, e.g., Slappy, 461 U.S. at 12 ("In the face of the unequivocal and uncontradicted statement by a responsible officer of the court that he was fully prepared and 'ready' for trial, it was far from an abuse of discretion to deny a continuance."); Cicale, 691 F.2d at 106 (quoting United States v. Bentvena, 319 F.2d 916, 936 (2d Cir. 1963)) ("where the inability of retained counsel to serve gives promise of unreasonable delay or inconvenience in completing the trial, the court may require the defendant to secure other counsel"); Childs v. Herbert, 146 F. Supp.2d 317, 323-24 (S.D.N.Y. 2001) (trial court's denial of continuance was not arbitrary where, although attorney's reason for requesting a continuance – a medical problem – was reasonable, attorney could not provide a date certain for his return, the case had been pending for eighteen months, and the interests of the defendant, the victim's relatives, and the public demanded a speedy trial). Accordingly, the state court's decision denying Petitioner's claim did not unreasonably apply federal law. This claim should now be denied.[21]

---

[21] Ground One of the Petition states "Petitioner was deprived of his right to counsel of his choice and to the effective assistance of counsel." (Pet., at 6). Petitioner's Memorandum in support of the Petition, however, discusses this claim (identified as "Point II" therein) only in terms of the right to the counsel of choice. (See Pet'r Mem., at 14-23; see also generally Pet'r Reply Mem. of Law in Supp. of Pet. ("Pet'r Reply") (Docket No. 32)). It is clear that the right to the effective assistance of counsel and the right to the counsel of one's choice are separate and distinct claims. Gonzalez-Lopez, 548 U.S. at 146. Accordingly, any ineffective assistance of counsel claim has been abandoned due to Petitioner's failure to brief the issue. King v. Greene,

2.     *Eavesdropping and Minimization (Claim 2)*

Petitioner asserts the State "failed to minimize the conversations that were seized pursuant to court ordered eavesdropping in violation of the Fourth Amendment of the U.S. Constitution and 18 U.S.C. § 2515, et seq." (Pet., at 8).  Specifically, Petitioner argues that an investigator testified before the grand jury that *all* intercepted calls were automatically recorded onto DVDs and computer hard drives, which constituted unlawful "seizures."  Petitioner also argues that the computer hard drives containing these recordings were never sealed by the court and that the forty-nine Albanian communications minimized during the discovery phase of trial were not minimized "as soon as practicable."  Petitioner also seeks leave to conduct discovery pursuant to Rules 6 and 7 of the Rules Governing Section 2254 Cases in the United States District Courts for this claim.  (See Pet'r Mem., at 4-13; see also generally Pet'r Reply).

Respondent disputes Petitioner's contentions and argues Claim 2 is not cognizable upon federal *habeas* review, fails to present a federal question, remains unexhausted, and is otherwise neither contrary to, nor an unreasonable application of, clearly established federal law. Respondent also argues Petitioner's request for discovery should be denied.  (See Resp't Mem., at 1-22; see also July 31, 2009 Letter (Docket No. 35)).

a.     **Fourth Amendment Violation**

To the extent Petitioner argues his Fourth Amendment rights were violated, such a claim must be denied.  In Stone v. Powell, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the grounds that

---

No. 03-cv-3743, 2006 WL 1764379, at *1 n.1 (E.D.N.Y. June 26, 2006).

evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482 (1976); see also, e.g., Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim . . . , the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]"). Accordingly, Fourth Amendment claims may not be reviewed by this Court unless one of two narrow exceptions apply: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

Petitioner does not – nor could he – contend that New York failed to provide corrective procedure to redress his alleged Fourth Amendment claim. Indeed, as the Second Circuit has noted, "the federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq*. . . . , as being facially adequate." Id. at 70 n.1 (internal quotation marks and citation omitted).

Rather, Petitioner asserts that an unconscionable breakdown occurred. Specifically, he argues that the trial court failed "to make a proper and adequate inquiry in connection with Mr. Lanna's suppression motion (which was based upon the sworn grand jury testimony of Investigator Velez)." (Pet'r Reply, at 3). Petitioner states the trial court failed to conduct a "searching inquiry" or otherwise hold an evidentiary hearing on this issue. Instead, he contends the court "spoke briefly" to the attorneys and reviewed the wrong evidence. In particular, he

25

states that the transcripts reveal that the judge reviewed the wrong investigator's grand jury testimony.  (See id. at 3-5; see also Feb. 15, 2006 Tr., at 8, 11 (Docket No. 15)).

"An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry into the petitioner's claim."  Valtin v. Hollins, 248 F. Supp.2d 311, 317 (S.D.N.Y. 2003).  Where a petitioner was provided "an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal review."  Graham, 299 F.3d at 134.  In this case, no breakdown in procedure occurred: Petitioner argued his Fourth Amendment claim before the trial court, during a pretrial conference, in a motion to set aside the verdict, and – most importantly – on direct appeal through both written brief and oral argument.  (See, e.g., Pet'r Mem., at 8-10 (discussing oral argument)).  Even if Petitioner is correct that the trial court denied the suppression motion without first reviewing the relevant evidence, Petitioner has not established that the Second Department similarly erred.  See, e.g., McClelland v. Kirkpatrick, 778 F. Supp.2d 316, 331 (W.D.N.Y. Apr. 21, 2011) (where petitioner presented issue on direct appeal, no unconscionable breakdown occurred despite petitioner's contention that trial court engaged in "erroneous fact-finding, incorrect[ly] appli[ed] . . . the law, and refus[ed] to consider the pertinent issues"); Munford v. Graham, No. 09-cv-7899, 2010 WL 644435, at *17 (S.D.N.Y. Feb. 24, 2010), Report & Recommendation adopted, 2010 WL 2720395 (S.D.N.Y. June 29, 2010) (collecting cases and noting no breakdown occurred even if trial court failed to make reasoned inquiry, because petitioner also "had a full and fair opportunity to litigate his Fourth Amendment claim on direct appeal").  Accordingly, this claim must be denied.

      **b.**      **State Statutory Violation**

To the extent Petitioner argues a separate claim based upon violations of Article 700 of the New York State Criminal Procedure Law, such a claim must also be denied. Issues involving compliance with state procedural laws do not raise federal questions necessary for *habeas* review. Zagarino v. West, 422 F. Supp. 812, 814 n.1 (E.D.N.Y. 1976) (citing Rose v. Hodges, 423 U.S. 19, 21 (1975)); see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); see also, e.g., Kirby v. Senkowski, 141 F. Supp.2d 383, 398 n.8 (S.D.N.Y. 2001) (claim involving New York wiretapping statute "constitutes a state law claim that cannot be raised in a habeas petition").

### c.  **Federal Statutory Violation**

Finally, to the extent Petitioner presents a separate claim based upon the federal wiretapping statute, Title III of the United States Code § 2515 *et seq.*, such a claim must be denied. As a preliminary matter, I note that the Second Circuit has not decided whether Title III claims constitute an independent basis for federal *habeas* relief, distinct from Fourth Amendment claims subject to the limitations of Stone v. Powell. Cruz v. Alexander, 669 F.2d 872, 874 n.2, 875-76 & n.4 (2d Cir. 1982), decision clarified, 708 F.2d 31, 34 (2d Cir. 1983); see also Lasso-Reina v. Haponick, No. 05-cv-8817, 2009 WL 3334843, at *16 n.14 (S.D.N.Y. Oct. 14, 2009) (collecting cases). I assume for purposes of this discussion that Title III provides an independent basis for relief.

Respondent asserts, in part, that any Title III claim remains unexhausted because it was not fairly presented to the Second Department on direct appeal. Specifically, Respondent argues that although the federal statute was mentioned in Petitioner's leave application to the New York Court of Appeals, it was never cited or discussed in his appellate brief. (Resp't Mem., at 15 &

27

n.8). It is clear that a claim may only be fairly presented for purposes of AEDPA exhaustion where it has been properly raised "in each appropriate state court." Baldwin, 541 U.S. at 29. Accordingly, failure to raise a claim in an appellate brief renders the claim unexhausted. See Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000) (citing Castille v. Peoples, 489 U.S. 346, 351 (1989)) ("Presenting a claim for the first time to a state court of discretionary review is insufficient to exhaust the claim unless the court considers it."); see also, e.g., Kellam v. Hunt, No. 06-cv-4395, 2007 WL 2005544, at *3 (S.D.N.Y. July 10, 2007) (citing Lurie, 228 F.3d at 124 and Lewis v. Dufrain, 392 F. Supp.2d 498, 502 (W.D.N.Y. 2005)) (where "petitioner raised the claims contained in his habeas petition in his letter to the New York Court of Appeals requesting leave to appeal, that effort was insufficient to exhaust these claims" because the claims were not presented to the Appellate Division).

Petitioner's appellate brief is devoid of reference to the federal wiretapping statute. However, the brief cites several state cases which discuss the statute. (See Br. of Def.-Appellant (attached to Resp't App. I, at Ex. 10), at 5, 12, 15-18 (citing People v. Darling, 95 N.Y.2d 530 (2000), People v. Capolongo, 85 N.Y.2d 151 (1995), People v. Gallina, 66 N.Y.2d 52 (1985), People v. Brenes, 42 N.Y.2d 41, 47 (1977), People v. Di Stefano, 38 N.Y.2d 640, 649 (1976), People v. Sher, 38 N.Y.2d 600 (1976), People v. Brenes, 385 N.Y.S.2d 530 (App. Div. 1976), and People v. Simmons, 378 N.Y.S.2d 263 (Sup. Ct. 1975))). Accordingly, the federal statutory wiretapping claim has been fairly presented. See Daye, 696 F.2d at 194.

However, *habeas corpus* is available to review a claim involving federal statutory violations only when the claim alleges "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1979); see also Farley, 512 U.S. at

28

353-54 (Hill standard controls collateral review under § 2254 "when a federal statute, but not the Constitution, is the basis for the postconviction attack"). Thus, the Court of Appeals has required a *habeas* petitioner claiming a statutory violation to show "a fundamental defect which inherently results in a complete miscarriage of justice . . . presenting exceptional circumstances where the need for the remedy afforded by habeas corpus is apparent." Reilly v. Warden, FCI Petersburg, 947 F.2d 43, 44 (2d Cir. 1991) (quotation omitted) (violations of Interstate Agreement on Detainers statute not cognizable under § 2254). Although there is apparently no Second Circuit authority on point, federal courts in other jurisdictions have applied the Hill standard and concluded that even substantial violations of the procedures mandated by Title III are not cognizable on *habeas* review. Hussong v. Warden, Wisconsin State Reformatory, 623 F.2d 1185, 190-91 (7th Cir. 1980); Barbosa v. Bissonnette, 434 F. Supp.2d 25, 34-35 (D. Mass. 2006).

Here, Petitioner has not even alleged, let alone established, that he is innocent or that his conviction represents a complete miscarriage of justice. Indeed, although Petitioner claims violations of procedures required under Title III, he has not pointed to any improperly recorded conversations which were used against him at trial, nor has he suggested that the procedural violations he alleges undermined the reliability of his conviction. Moreover, as discussed above, Petitioner had an opportunity to challenge the wiretap procedures at trial and on appeal; there was no violation of the rudimentary demands of fair procedure. Petitioner's wiretap claims therefore do not present "exceptional circumstances where the need for the remedy afforded by habeas corpus is apparent." Reilly, 947 F.2d at 44. Accordingly, any Title III claim is not cognizable on *habeas* review.

      **d.**     **Request for Discovery**

29

Petitioner requests this Court permit the parties to conduct certain discovery relevant to

Claim 2.  Specifically, he seeks production of:

> [A]ny and all documents . . . that relate to the minimization of the conversations
> seized pursuant to the wiretapping conducted in this case[, . . . ] all tape recordings,
> DVD disks and/or computer hard drives that relate to such wiretapping[, and . . .
> permission] to conduct the deposition of Peter A. Valez, Administrator[ ] of the
> "wire room" at the Westchester County District Attorney's Office.

(Pet'r Mem., at 13; see also Pet'r Reply, at 15).  Respondent contends Petitioner's request should

be denied.  (See July 31, 2009 Letter).

"Discovery in habeas petitions is generally limited since such petitions are usually based

on the state court's available record."  Lawson v. Taylor, No. 10-cv-0477, 2011 WL 839509, at

*2 (E.D.N.Y. Mar. 2, 2011).  However, "'[w]here specific allegations before the court show

reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate

that he is entitled to relief, it is the duty of the court to provide the necessary facilities and

procedures for an adequate inquiry.'"  Drake v. Portuondo, 321 F.3d 338, 345 (2d Cir. 2003)

(quoting Bracy v. Gramley, 520 U.S. 899, 908-09 (1997)).

In this case, as discussed above, Petitioner cannot show he is entitled to *habeas* relief.

Accordingly, Petitioner's request to conduct discovery should be denied.

### 3.    *Excessive Sentence (Claim 3)*

The final ground raised in the Petition asserts Petitioner's Eighth Amendment rights were

violated by the imposition of a 75-year aggregate sentence that "was so grossly disproportionate

to the crime of conviction." (Pet., at 9).  Respondent has not addressed this claim in its

memorandum in opposition.  (See generally Resp't Mem.)

Although set forth as a ground for *habeas* relief in the Petition, Petitioner has not

addressed Claim 3 in his memorandum in support of his Petition.  (See generally Pet'r Mem.; see

30

also Pet'r Reply).  The claim has therefore been abandoned.  <u>King</u>, 2006 WL 1764379, at *1

n.1.[22]

## IV. <u>CONCLUSION</u>

For the reasons set forth above, I conclude – and respectfully recommend that Your

Honor should conclude – that the petition be **DENIED**.  Further, because reasonable jurists

would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that

he was denied a constitutional right, I recommend that no certificate of appealability be issued.

<u>See</u> 28 U.S.C. § 2253(c); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

### NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total

of seventeen (17) days, from service of this Report and Recommendation to serve and file

written objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with

any responses to the objections, shall be filed with the Clerk of the Court with extra copies

delivered to the chambers of the Hon. Kimba M. Wood, at the Daniel Patrick Moynihan United

---

[22] In any event, such a claim would not warrant <i>habeas</i> relief.  It is well-settled that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam); <u>see also</u> <u>United States v. McLean</u>, 287 F.3d 127, 136 (2d Cir. 2002) (internal quotation omitted) ("there is no constitutionally cognizable right to concurrent, rather than consecutive, sentences").  At the time of the offense, New York law permitted twenty-five year determinate, consecutive sentences for the crimes of first-degree burglary and robbery.  <u>See</u> N.Y. Penal Law § 160.15 (classifying first-degree robbery as a Class B felony); <u>id.</u> § 140.30 (classifying first-degree burglary as a Class B felony); <u>id.</u> § 70.02(1)(a) (classifying first-degree robbery and first-degree burglary as violent felony offenses); <u>id.</u> §§ 70.00(1), (6); 70.02(2)(a), (3)(a) (requiring determinate sentences for Class B violent felony offenses, the maximum of which must not exceed twenty-five years); <u>id.</u> § 70.25(1)-(2) (permitting consecutive sentences for crimes involving separate acts or omissions); <u>id.</u> § 70.45(1)-(2) (requiring five year period of post release supervision).

States Courthouse, 500 Pearl Street, New York, New York 10007, and to the chambers of the

undersigned at the Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse,

300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Wood.

Dated: February 9, 2012
       White Plains, New York

                              Respectfully Submitted,

                              _____
                              Paul E. Davison
                              United States Magistrate Judge


A copy of the foregoing Report and Recommendation has been sent to the following:

            The Honorable Kimba M. Wood
            Daniel Patrick Moynihan United States Courthouse
            500 Pearl Street
            New York, New York 10007-1312

            John Wylie Mitchell, Esq.
            Law Offices of John W. Mitchell
            443 Greenwich Street, Suite 6E
            New York, New York 10013

            John James Sergi, Esq.
            Office of the Westchester County District Attorney
            111 Dr. Martin Luther King, Jr. Blvd.
            White Plains, New York 10601